EASTERLING *vs.* THE STATE.

[INDICTMENT FOR RETAILING.]

1. *Selling liquor drunk on the premises.*—The statutory prohibition against selling spirituous liquors "in any quantity, if the same is drunk on or about the premises," embraces places over which the seller has no legal right to exercise authority or control, but which are so near to his premises, and so situated in relation thereto, that they are within the mischief intended to be remedied ; but, where the liquor is taken by the purchaser, in the quart measure of the seller, to a place on the opposite side of the street, out of view of the seller's house, about fifty feet distant therefrom, and in front of another store, and is there drunk, the court cannot assume, as a legal conclusion, that such place is within the statute.
2. *Charge invading province of jury.*—Although the court, in instructing the jury, may state legal presumptions, it cannot draw an inference of fact.

From the Circuit Court of Wilcox.

Tried before the Hon. ROBERT DOUGHERTY.

THE indictment in this case was in the form prescribed by the Code. The evidence is thus set out in the bill of. exceptions. "It was proved that the defendant, within twelve months before the finding of the indictment, sold a quart of brandy peaches, with the liquor in which they had been preserved, to a gentleman who took them off, in the defendant's quart measure, and carried them around in front of a store which stood on the opposite side of the street from defendant's, and which faced from defendant's house; that said purchaser there placed the liquor, &c., on an empty goods-box, and brought out three tumblers from said store, and he, with two other persons, one of whom was a clerk in said store, there ate the peaches, and drank the liquor; that said goods-box was not in view of defendant's house; that the street separating the two houses was from 20 to 30 feet wide; that the quart measure was returned to the defendant, after the peaches and liquor had been drunk; that the liquor was weak and sweet, and witness believed it had whiskey in it. It was also shown, that the defendant, when he sold the liquor, told the purchaser that he did not know the law, and was unwilling to violate it, and that the liquor must not be drunk on his premises; and that the purchaser told him he would not."

On this evidence, the court charged the jury, "that if they believed from the evidence that the defendant had reasonable grounds to believe that the liquor would be drunk about his premises, and that it was drunk before said store, then he was guilty, if he suffered it to be drunk there, or did not in fact object to it;" to which charge the defendant excepted.

D. W. BAINE and F. K. BECK, for appellant.

M. A. BALDWIN, Attorney-General, *contra*.

RICE, C. J.—The statute of force in 1847 and 1848, which prohibited the retailing of spirituous liquors except

by licensed persons, permitted merchants and shop-keepers to sell by the quart, if the liquor was not drank in their stores, or *on the premises* where they resided or had their stores. In 1847, in Swan v. The State, 11 Ala. 594, this court held, that the term "premises," as used in that statute, meant "something over which an individual has control, either by actual possession, *or by claiming and exercising* the right to prevent the occupation by others." In 1848, in Downman v. The State, 14 Ala. 242, this court manifested its dissatisfaction with that definition of the term, by giving to it a materially different definition, and holding that it meant "some place over which the shop-keeper has *the legal right* to exercise authority and control."

Some four years after these decisions had been made, the Code was framed and adopted. The presumption must be indulged, that its framers knew of those decisions. With that knowledge, they inserted in the Code a section, to-wit, section 1058, which declares it unlawful for any person, without a license, to sell vinous or spirituous liquor, in any quantity, "if the same is drank *on* or *about* the premises." Looking at the former law, the decisions made under it, and the introduction into section 1058 of the Code of the phrase *"about"* the premises, which was not in the former law, we think it clear that the term premises was used in that section in the sense given to it in the decision last above cited—the decision latest in point of time. The plain object of that section was, to prevent the drinking of any vinous or spirituous liquor, sold by an unlicensed person, *on* or *about* his premises. The phrase, "about the premises," was used to embrace places over which the unlicensed seller of such liquor had no legal right to exercise authority or control, but which were yet so near to his premises, and so situated in relation thereto, that to permit the liquor sold by him to be drank at them would produce the very evil in *kind*, though not in *degree*, which the prohibition against drinking it on his premises was intended to prevent.

But, where the premises of the unlicensed seller of such liquor are on one side of a public street twenty or thirty feet

wide, and the buyer takes it in the quart measure of the seller, to the front of the store of another on the opposite side of the street, and out of the view of the seller's house, and about fifty feet therefrom, it is not *a conclusion of law* from these facts, without more, that the place where the liquor was drank was either the premises of the seller, or about his premises, within the meaning of section 1058 of the Code.

As that place did not appear to be "*on* the premises" of the seller, and as the facts proved, *independent of inferences which the jury might have been authorized to draw from the evidence*, did not, in legal contemplation, establish the proposition that the place was "*about* the premises" of the seller,—it was error in the court to pronounce, as matter of law, that upon the facts proved the defendant was guilty. On a trial by jury in a criminal case, the court may announce presumptions of law in its charge to the jury, but it cannot make out the guilt of the defendant by drawing an inference of fact. In such case, it is the exclusive province of the jury to draw such inference.

For the error in the charge above pointed out, the judgment is reversed, and the cause remanded.