UNITED AIR LINES, INC., Plaintiff,

v.

Joshua Allen GREGORY and Omar Safar Halabi, Defendants.

Civil Action No. 09–10394–NMG.

United States District Court, D. Massachusetts.

May 20, 2010.

Opinion Denying Interlocutory Review July 23, 2010.

Gina L. Durham, DLA Piper LLP, Chicago, IL, Matthew J. Iverson, Lauren Ann H. Pond, DLA Piper Rudnick Gray Cary US LLP, Boston, MA, for Plaintiff.

Joseph B. Lichtblau, Ian J. McLoughlin, Robert E. Ditzion, Todd S. Heyman, Shapiro, Haber & Urmy, LLP, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This matter arises from a dispute between the plaintiff, United Air Lines, Inc. ("United") and defendants Joshua Gregory Allen ("Allen") and Omar Safar Halabi ("Halabi") (collectively, "the defendants") concerning the defendants' alleged scheme to obtain and sell flight vouchers. Before the Court are the defendants' motions to dismiss.

### I. *Factual Background*

The complaint alleges that beginning around April, 2008, and continuing on more than 100 subsequent occasions, the defendants engaged in a scheme to defraud United. Pursuant to that scheme, the defendants allegedly purchased multiple, refundable, one-way tickets on heavily booked United flights to different destinations on the same day. Using disguises and altering their names to avoid detection, the defendants would volunteer to give up their seats and accept a proffered flight voucher in exchange. For example,

United alleges that on August 3, 2008, defendant Allen used four different aliases to book the following flights out of Boston:

1) An 11:59 a.m. flight to Chicago under the name "Mr. Joshua Gregory";

2) A 3:30 p.m. flight to San Francisco under the name "Mr. Joshua Allen";

3) A 4:35 p.m. flight to Denver under the name "Mr. Allen Gregory"; and

4) A 6:09 p.m. flight to Los Angeles under the name "Mr. Gregory Joshua".

United also alleges that the defendants would provide different Loyalty Program Member Identifications during the booking process in order to conceal further from United that their reservations all pertained to the same person. In the event that the gate agent did not seek volunteers to give up their seats, the defendants would simply choose not to board the aircraft and obtain a full refund for their tickets.

After collecting their free flight vouchers, the defendants would then sell those vouchers on eBay or through other various venues. Although the vouchers included restrictions expressly stating that they would be void if sold, the defendants apparently encouraged buyers to circumvent those restrictions by falsely claiming to United that they had validly obtained the vouchers.

United maintains that the defendants' scheme has caused it 1) to authorize flight vouchers that would not have otherwise been issued, 2) to take seats out of its inventory that could have otherwise been sold to paying customers and 3) to provide free air travel to customers who were not entitled to such travel. United claims that, as a result of the defendants' conduct, it has lost business in excess of $75,000.

## II. *Procedural History*

This case was filed on March 13, 2009. On that day, United filed an *ex parte* motion to seal its complaint on the grounds that anyone who read it carefully would be able to use the information to carry out a copy-cat scheme. In a Memorandum and Order dated April 24, 2009, 645 F.Supp.2d 34 (D.Mass.2009), the Court allowed United's motion, in part, and denied it, in part. Because protecting United against future fraud necessitated the sealing of only specific details of defendants' scheme (rather than the entire complaint), the Court allowed United to retrieve its original complaint and file an amended version in its place. The amended complaint was to contain the general allegations of the scheme without specific details. The latter were to be included only in a sealed addendum.

Rather than filing a sealed addendum, United filed two entirely separate complaints, both entitled "First Amended Complaint" ("FAC"). The unsealed version conspicuously redacted the perceived sensitive paragraphs. That complaint alleged four counts against the defendants: 1) common law fraud (Count I), 2) intentional inference with advantageous business relationships (Count II), 3) violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a), (Count III) and 4) civil conspiracy (Count IV).

After United filed its FAC, both defendants, represented by separate counsel, moved to dismiss United's allegations for failure to state a claim as well as on preemption grounds. At a hearing on December 21, 2009 ("the December Hearing"), the Court dismissed all four counts of United's FAC without prejudice to the filing of a second amended complaint within 30 days.

The Court made it clear, however, that the complaint was to be filed publicly and

that only the sensitive details of the scheme could be pled in a separate, sealed addendum. The Court also emphasized that, although the requested sealing was to be permitted at the initial pleading stages of the litigation (where the litigants' substantive rights were not at stake), it would not necessarily be warranted if the plaintiff continued to pursue its action.

Finally, the Court explained that the dismissal of the FAC was not on preemption grounds (that issue having been decided in United's favor) but rather because United had not adequately pled its claims. The Court briefly described the problems with each count as follows:

1) the alleged fraudulent misrepresentations (Count I) were not stated with sufficient particularity;

2) the alleged intentional interference claim (Count II) did not state the particular business relationship with which the defendants interfered or the damages the plaintiff suffered as a result;

3) the Lanham Act claim (Count III) contained no allegations that the defendants used United's trademark under circumstances that, if true, would likely lead to consumer confusion; and

4) the claim for civil conspiracy (Count IV) was inadequate for the same reasons set forth with respect to the fraud and intentional interference claims.

On January 20, 2010, in compliance with the Court's directive, United filed a Second Amended Complaint ("SAC") with a sealed addendum. The SAC omits the Lanham Act count but retains the three common law claims (fraud, intentional interference with advantageous business relations and civil conspiracy). The Court, nevertheless, retains subject matter jurisdiction by virtue of diversity of citizenship. Defendants

Halabi and Allen filed separate motions to dismiss the SAC in February, 2010. United filed a timely consolidated opposition to those motions which are currently before the Court.

Having considered the allegations in the sealed addendum, the Court has determined that the purported scheme is not so subtle or complex as to require the sealing of its details. Given the relative simplicity of the scheme, the common law presumption of public access to judicial documents outweighs the risk that those who read the complaint will thereby be enabled to engage in a copy-cat scheme. From this point forward, therefore, all pleadings in this case, as well as this Memorandum and Order, will be public.

### III. *Legal Analysis*

### A. Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. *Id.* Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. *Id.* at 1950.

## B. Application

### 1. Fraud (Count I)

■ To state a claim for intentional misrepresentation, United must allege that 1) the defendants knowingly made a false statement of material fact, 2) the defendants intended that it be relied on by United and 3) United actually and reasonably relied on the statement. *See Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 575 N.E.2d 70, 74 (1991).

The theory of fraud asserted by United in the Second Amended Complaint is significantly narrower than the one asserted earlier. In the FAC, United's fraud theory was premised, at least in part, on the defendants' failure to disclose to United that they did not intend to board the flights they had booked or to pay United for the reservations. The Court rejected that theory at the December Hearing, on the grounds that one customer buying multiple, full-fare tickets fully intending not to use one or more of such tickets does not commit actionable fraud. The Court indicated, however, that the systematic acquisition and resale of flight vouchers under false pretenses could constitute fraud but that the alleged scheme, at least as described in the FAC, had failed to so plead.

In light of the Court's rejection of United's "duty to disclose" theory of fraud, the SAC asserts a slightly different argument. The sealed addendum breaks down the defendants' alleged scheme into two components: 1) the "scheme to obtain vouchers" and 2) the "scheme to redeem void vouchers". As part of the first scheme, United alleges that the defendants, using modified names, disguised appearances and different loyalty program numbers, purchased refundable one-way tickets on heavily-booked flights to different destinations on the same day, volunteered to give up their seats and received vouchers in exchange. As discussed above, United has provided several examples of those allegedly fraudulent transactions, including dates and times of the defendants' ticket purchases, their alleged destinations and the aliases they used to make those reservations.

The details of the second scheme are less clearly articulated. The addendum states that once the defendants sold a voucher, they would instruct the recipient to tell United that the voucher was valid. The scheme would then work as follows:

1) in reliance on the voucher recipients' misrepresentations, United would provide them with a record locator number associated with each reservation;

2) defendants' customers would contact the defendants and give them the record locator numbers;

3) defendants would then go to the airport in person, provide the United agent with the record locator number and falsely state that the voucher had been transferred in compliance with its terms; and

4) in reliance on that representation, United would redeem the voucher

and issue a ticket for the voucher recipient.

The defendants (whose separate arguments are not inconsistent) contend that the renewed allegations in the SAC do not state a claim for fraud because United does not: 1) allege fraud with the requisite particularity required by Fed.R.Civ.P. 9(b), 2) properly allege reliance or 3) demonstrate that it has incurred damages as a result of the defendants' alleged misconduct.

### a. Compliance with Fed.R.Civ.P. 9(b)

The procedure for pleading fraud in federal diversity suits is governed by Fed. R.Civ.P. 9(b). That rule mandates that in all averments of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirement, the complaint must, at a minimum, specify the "time, place, and content of the alleged false or fraudulent representations." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18–19 (1st Cir.2002).

██ Halabi contends that even the narrower allegations of fraud laid out in United's SAC do not conform with Fed. R.Civ.P. 9(b). Despite United's claim that the defendants made over 100 false representations, United identifies only one specific action taken by Halabi involving the purchase of a pair of conflicting flight reservations from Boston to two different destinations on August 3, 2008. Even that transaction, Halabi argues, does not state a claim for fraud, because his representations made in connection with the flight reservations were truthful. He promised to pay for the refundable tickets if, and only if, he chose to board the flights. Given that he chose to stay home, Halabi avers that he was under no obligation to pay for the tickets.

Halabi's arguments are misplaced. Although, as Halabi points out, United's SAC does not describe the time, place and contents of each of the 100 alleged misrepresentations, that level of specificity is not required by Rule 9(b). Although the rule mandates that the plaintiff state the circumstances of the fraud with particularity, he need not plead all of the evidence or facts supporting his claim. *See U.S. ex rel. Franklin v. Parke–Davis, Div. of Warner–Lambert Co.*, 147 F.Supp.2d 39, 46–47 (D.Mass.2001); *Westinghouse Elec. Co. LLC v. Healy*, 502 F.Supp.2d 138, 142 (D.Me.2007) (complaint that provided several examples of allegedly fraudulent expense account reimbursements provided sufficient detail). Rather, the rule is intended to give defendants notice of the plaintiff's claim, to discourage fishing expeditions and "strike suits" and to protect defendants from baseless allegations that may damage their reputations. *Parke–Davis*, 147 F.Supp.2d at 46; *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir.1996).

Contrary to Halabi's assertion, this is not a case where

> [t]he plaintiffs' veiled allegations have forced both the defendant and the Court to search in vain for the misrepresentations that might form the basis of their claim.

*Health Plans, Inc. v. New York Life Ins. Co.*, 898 F.Supp. 941, 948 (D.Mass.1995) (where a "cryptic" recital of the general elements of a fraud claim were found to be wanting). The allegations in the sealed addendum, although by no means exhaustive, describe with sufficient particularity: 1) the methods the defendants used to obtain vouchers, 2) the steps they took to prevent detection by United (including the specific aliases they used), 3) the process by which they sold the flight vouchers and 4) the false representations they made to

United employees to help the voucher recipients redeem those vouchers.

Furthermore, strict application of Rule 9(b) may be relaxed in certain circumstances. For example, when the underlying facts are "peculiarly within the defendants' control," less specificity may be required pending discovery. *Parke–Davis*, 147 F.Supp.2d at 47. Here, given that United was not privy to the defendants' conversations with the voucher recipients, it is reasonable to excuse, at least at this stage, the plaintiff's inability to plead the circumstances surrounding those transactions with a "high degree of precision." *Id.* Furthermore, where, as here, the alleged fraud occurs over an extended period of time and involves numerous transactions, pleading the specifics of each transaction is unnecessary. *Id.*

Halabi's second argument, that the representations he made in connection with the flight reservations were truthful (and therefore, not actionable) misses the point. United does not allege that the purchase of fully refundable tickets to multiple destinations in one day is, in and of itself, fraudulent. Rather, those purchases are allegedly part of a larger scheme which involves the acquisition of vouchers under false pretenses and their unlawful redemption.

Thus, with the additional details that United has alleged in the sealed addendum to the SAC, the Court is satisfied that the fraud claim complies with Fed.R.Civ.P. 9(b).

### b. Reliance

■ Both defendants argue that United has not (and cannot) plead reliance on their alleged misrepresentations because United would have allowed them to purchase multiple tickets on parallel flights even if it had been aware that the same person was booking both tickets. They suggest that the very nature of fully-refundable tickets is to allow a single purchaser to make "duplicate bookings" and decide to use or not use the tickets as he desires. Thus, even if the defendants had not altered their names or appearances, United would (arguably) have issued them the tickets anyway.

The defendants' argument, however, begs the question: if United would have issued the duplicate tickets anyway, why did the defendants go to such lengths to change their names and appearances? Moreover, the defendants fail to address the broader picture. The alleged fraud, as explained above, is not confined to the defendants' use of altered names and disguises to book multiple tickets. Although those misrepresentations may have reduced the risk that United would detect the scheme, they were not crux of the purported fraud. The apparent alleged fraud in this case (and the one on which United reasonably relied) consists of the representations made by the defendants and the voucher recipients that the vouchers had been transferred in compliance with their terms. United claims that had it known the vouchers were invalid, it would not have redeemed them or issued tickets to the voucher recipients. Moreover, even if the defendants did not affirmatively represent to the United agents that the vouchers had been "transferred in compliance with the terms," the act of exchanging the vouchers for tickets is an implicit assertion that they are valid.

Thus, despite the defendants' arguments to the contrary, the Court finds that United has properly pled reliance.

### c. Damages

■ The defendants' arguments concerning damages are also unavailing. The defendants assert that United has improperly pled damages because "merely taking a seat out of inventory" does not cost

United anything. In other words, United has not shown that, but for defendants' scheme, it would have sold more tickets and earned more money.

Defendants' argument falls short on several levels. First, United has alleged that, in reliance on the defendants' scheme, it has not only

taken seats out of its inventory that it could have otherwise sold, [but also] provided free air travel to passengers who are not entitled to such travel [and] lost the opportunity to sell tickets and services to those passengers and other potential United customers.

United claims that those damages amount to at least $75,000.

■ Moreover, contrary to Halabi's suggestion, United need not plead the damages component of its fraud claim with the same particularity as the other elements. Rule 9(b), "while requiring allegations of fraud to be stated with particularity, does not require particularity as to the element of damages." *Minuti v. Johnson*, 2003 WL 260705, at *2 (N.D.Ill.2003). Thus, although United has not identified particular customers who, but for the defendants' scheme, would have bought tickets on United's flights, it has adequately pled that the defendants' actions caused it to incur substantial damages. *See American Airlines v. Platinum World Travel*, 769 F.Supp. 1203, 1207–08 (D.Utah 1990) ("[T]he plaintiff need not document a specific instance of lost revenue in order to establish that it has been injured and that it is entitled to damages.")

In sum, United's SAC, with respect to its fraud claim, adequately addresses the deficiencies in the FAC and, accordingly, the fraud claim will not be dismissed.

## 2. Tortious Interference with Business Relations (Count II)

■ To state a claim for intentional interference with an advantageous business relationship, United must allege: 1) the existence of a business relationship, 2) the defendants' knowledge of that relationship, 3) the defendants' intentional interference with that relationship through improper motive or means and 4) the plaintiff's loss of advantage as a result of that interference. *Singh v. Blue Cross and Blue Shield of Massachusetts, Inc.* 182 F.Supp.2d 164, 178 (D.Mass.2001).

■ In the SAC, United alleges that the defendants' scheme interfered with United's relationship with its customers by causing passengers to pay the defendants, rather than United, for their seats on United flights. Halabi contends that those allegations cannot support a claim for intentional interference because United's future dealings with prospective customers are too speculative to establish a "business relationship" under the first element of the tort. The Court disagrees.

■ It is well-settled that the tort of intentional interference extends to prospective business relationships so long as the plaintiff has a "reasonable expectancy of financial benefit" from those relationships. *Singh,* 182 F.Supp.2d at 178; *Brown v. Armstrong,* 957 F.Supp. 1293, 1305 (D.Mass.1997); *see also Blackstone v. Cashman,* 448 Mass. 255, 860 N.E.2d 7, 12 (2007) ("The tort of intentional interference with advantageous relations protects a plaintiff's present *and* future economic interests") (emphasis added). Here, United alleges that it had a reasonable expectation that it would have sold the seats that the defendants caused to be withdrawn from its inventory. That is enough to satisfy the first element of the tort of intentional interference, and, accordingly, the claim will not be dismissed.

## 3. Civil Conspiracy (Count III)

Given that United has stated viable claims for fraud and intentional interfer-

ence, its conspiracy claim, which is derivative of the other two claims, will also survive.

## ORDER

In accordance with the foregoing, Defendants' motions to dismiss (Docket Nos. 67 & 70) are **DENIED**.

**So ordered.**

## MEMORANDUM & ORDER

This matter arises from a dispute between the plaintiff, United Air Lines, Inc. ("United") and defendants Joshua Gregory Allen ("Allen") and Omar Safar Halabi ("Halabi") (collectively, "the defendants") concerning the defendants' alleged scheme to obtain and sell flight vouchers. Before the Court is the defendants' motion for interlocutory review.

### I. *Factual Background*

The complaint alleges that beginning around April, 2008, and continuing on more than 100 subsequent occasions, the defendants engaged in a scheme to defraud United. Pursuant to that scheme, the defendants allegedly purchased multiple, refundable, one-way tickets on heavily booked United flights to different destinations on the same day. Using disguises and altering their names to avoid detection, the defendants would volunteer to give up their seats and accept a proffered flight voucher in exchange.

United also alleges that the defendants would provide different Loyalty Program Member Identifications during the booking process in order to conceal further from United that their reservations all pertained to the same person. In the event that the gate agent did not seek volunteers to give up their seats, the defendants would simply choose not to board the aircraft and obtain a full refund for their tickets.

After collecting their free flight vouchers, the defendants would sell them on eBay or through other various venues. Although the vouchers included restrictions expressly stating that they would be void if sold, the defendants apparently encouraged buyers to circumvent those restrictions by falsely claiming to United that they had validly obtained the vouchers.

United maintains that the defendants' scheme has caused it 1) to authorize flight vouchers that would not have otherwise been issued, 2) to take seats out of its inventory that could have otherwise been sold to paying customers and 3) to provide free air travel to customers who were not entitled to such travel. United claims that, as a result of the defendants' conduct, it has lost business in excess of $75,000.

### II. *Procedural History*

On May 15, 2009, United filed a First Amended Complaint ("FAC") alleging four counts against the defendants: 1) common law fraud, 2) intentional inference with advantageous business relationships, 3) violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a), and 4) civil conspiracy.

After United filed its FAC, both defendants, represented by separate counsel, moved to dismiss United's allegations for failure to state a claim as well as on the grounds that United's state law claims were preempted by the Airline Deregulation Act ("ADA"). At a hearing on December 21, 2009, the Court dismissed all four counts of United's FAC without prejudice to the filing of a second amended complaint within 30 days. The Court explained that the dismissal of the FAC was not on preemption grounds (that issue having been decided in United's favor) but rather because United had not adequately pled its claims.

United filed its Second Amended Complaint ("SAC") on January 20, 2010. The SAC omits the Lanham Act count but retains the three common law claims. The defendants filed separate motions to dismiss the SAC in February, 2010, both of which the Court denied in a Memorandum and Order dated May 20, 2010. Although the defendants urged the Court to reconsider its ruling on the question of federal preemption, the Court declined to revisit that issue. Halabi promptly moved for certification of the preemption question under 28 U.S.C. § 1292(b). Although Allen did not originally join in Halabi's motion, he later moved the Court to do so.

On July 9, 2010, the parties appeared before the Court for a motion hearing.[1] Having thoroughly considered the parties' written submissions and oral arguments, the Court now announces its ruling.

### III. *Legal Analysis*

#### A. **Legal Standard**

 Pursuant to 28 U.S.C. § 1292(b), a district judge may certify for interlocutory review an order, not otherwise appealable, that involves: 1) a controlling question of law, 2) as to which there is grounds for a substantial difference of opinion and 3) where an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Philip Morris, Inc. v. Harshbarger*, 957 F.Supp. 327, 330 (D.Mass.1997). Certification under § 1292(b) is an extraordinary procedure and the party seeking it bears a heavy burden of convincing the court that

> exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal citation omitted); *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1010 n. 1 (1st Cir. 1988) (interlocutory review should be used "sparingly and only in exceptional circumstances").

#### B. **Application**

 The Airline Deregulation Act ("ADA") mandates that

> a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier.

49 U.S.C. § 41713(b)(1). Although the ADA has a "broad preemptive purpose," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–87, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), its scope is not unlimited. A state law claim is preempted only if the law either, on its face, "explicitly refers to" an airline's prices, routes or services or, in application, has a forbidden "significant effect" on the same. *Buck v. American Airlines, Inc.*, 476 F.3d 29, 34–35 (1st Cir.2007); *United Parcel Service v. Flores–Galarza*, 318 F.3d 323, 335 (1st Cir. 2003). State actions that affect airlines' fares, routes or services in "too tenuous, remote, or peripheral a manner" are not preempted. *Morales*, 504 U.S. at 390, 112 S.Ct. 2031. In addition to state laws that have only a tenuous effect on airline rates and services, claims for breach of contract that "simply give effect to bargains offered by the airlines and accepted by customers" also escape preemption because they further Congress' objective of market efficiency. *American Airlines v. Wolens*, 513 U.S. 219, 228–30, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

---

**1.** Counsel for Allen did not appear at the hearing but moved in writing to join Halabi's

motion for interlocutory review on that same day.

In their previous pleadings, the defendants sought dismissal of United's claims on the grounds that they were an attempt to use state tort law to alter the parties' voluntarily-assumed, contractual obligations and, as such, were preempted by the ADA. Their argument proceeded as follows:

Under United's current fare structure, the right to cancel a full-fare ticket, even after the flight is completed, is a contractual right built into the price of the ticket. The defendants assert that, in effect, United's suit (which does *not* assert a claim for breach of contract) seeks to use state law to change the terms of its air travel service by 1) eliminating the unfettered cancellation rights associated with a full-fare ticket when customers volunteer to be bumped from over-booked flights and 2) imposing an additional disclosure obligation on such passengers regarding their intent to fly. If full-fare ticket holders are not allowed both to keep their bumping voucher and cancel their full-fare ticket, then their full-fare tickets are, in essence, converted into ordinary discount tickets. The defendants reason, relying on *Wolens,* 513 U.S. at 233, 115 S.Ct. 817, that a ruling in this case that the defendants committed fraud would have a "significant effect" on airline fares because it would change the basic terms and conditions of United's full-fare tickets, thereby altering the parties' bargain.

At a motion hearing in December, 2009, the Court rejected the defendants' preemption argument, finding that United's claims had too tenuous an effect on United's rates, routes or services to warrant preemption. Although the First Circuit has never specifically considered whether an airline's attempt to prosecute ticketing fraud under state law has a forbidden "significant effect" on airlines' rates or services, the Court relied on the reasoning of two cases in which other courts considered, and ultimately rejected, preemption arguments similar to those raised by the defendants.

In the first case, *Continental Airlines v. Weiner,* Continental brought suit against several individuals for allegedly selling discount airfare coupons without authorization. 1999 U.S. Dist. LEXIS 16377, at *2–3 (C.D.Cal. Mar. 29, 1999). The court held that Continental's state law claims had too tenuous an effect on the regulation of Continental's fares to warrant preemption because they did not require the court to inquire into the validity of Continental's programs or practices but only into the appropriateness of the non-carrier defendants' actions. *Id.* at *15–17.

In the second case, *Frequent Flyer Depot, Inc. v. American Airlines, Inc.,* 281 S.W.3d 215 (Tex.App.2009), American Airlines sought a temporary injunction to prevent defendants from brokering the sale and purchase of its reward points. The Texas Court of Appeals found that American Airlines' state law claims were not preempted, noting

> the [ADA] was intended to preempt only those state actions having a regulatory effect upon the airlines rather than to preclude airlines from seeking the benefits and protections of state law to enforce their self-imposed standards, regulations, and contracts.

281 S.W.3d at 221–22.

The defendants, dissatisfied with this Court's ruling on ADA preemption, now move it to certify to the First Circuit Court of Appeals the following question:

> whether a party to an air transportation services contract can assert tort claims in the face of a preemption defense against the party with which it has contracted concerning the terms of such services.

For the reasons set forth below, the defendants' question is inappropriate for interlocutory review.

### 1. Whether the Subject Case Involves a Controlling Question of Law

██ A question of law is controlling if "reversal of the district court's order would terminate the action." *Philip Morris Inc.*, 957 F.Supp. at 330 (internal citation omitted). Here, if United's tort claims are preempted as a matter of law, United's complaint would be dismissed in its entirety. Thus, the preemption question is controlling.

██ The more difficult query, however, is whether the particular preemption issue that arises in the instant case is one of *pure law*. A legal issue is suitable for interlocutory review only if it raises a "pure question of law" rather than "merely ... an issue that might be free from a factual contest." *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 676–77 (7th Cir.2000). The defendants contend that preemption is a pure question of law because it is "something the court of appeals [can] decide quickly and cleanly without having to study the record." *Id. Indeed*, in *Ahrenholz*, Judge Posner specifically referred to ADA preemption as the archetypal example of an abstract legal issue, the resolution of which could "head off protracted, costly litigation." *Id.* at 677.

██ United responds that although a preemption defense often turns on a pure question of law, the preemption question in the instant case requires an inherently factual analysis. Under controlling First Circuit precedent, the ADA preempts laws that either 1) explicitly refer to an airlines prices or 2) have a significant effect upon those prices. *Buck*, 476 F.3d at 34–35. United insists that whether an effect is significant is not a pure question of law but

one of fact and, accordingly, the kind of claim that an appellate court can better decide after the factual record is more fully developed. In United's view, because the defendants' preemption defense turns on a factual finding that United's tort claims have a "significant effect" on airline rates or services, the best result they could hope for is a remand to this Court for further development of the factual record.

United's argument on this point is unpersuasive. Numerous other ADA preemption questions have been reviewed on an interlocutory basis, many of which involved analyses of "relatedness" or "significant effects". *See, e.g., Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir.2004) (state regulation of leg room has significant effect on airline prices); *United Airlines v. Mesa*, 1999 WL 1144962 (N.D.Ill. Oct. 5, 1999) (certifying for interlocutory review order regarding whether regional airline's fraud and fiduciary duty claims against major airline were preempted by ADA as related to routes of air carrier). Thus, it cannot be the case that every ADA ruling is inappropriate for interlocutory review simply because it involves the "significant effects" test.

Here, as in *Witty* and *Mesa*, interlocutory review would not require detailed review of the factual record. Indeed, this Court was able to resolve the preemption question before discovery commenced. Accordingly, the first criterion for certification is met.

### 2. Whether an Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation

The requirement that an appeal may materially advance the ultimate termination of the litigation is "closely tied to the requirement that the order involve a controlling question of law." *Philip Morris*, 957 F.Supp. at 330. As a general rule,

**92**

when a pure question of law can be resolved expeditiously by the Court of Appeals, interlocutory review saves time and expense for both the Court and the litigants. Here, although an affirmation of this Court's decision would be unlikely to advance the termination of this litigation, a reversal undoubtedly would.

### 3. Whether There is a Substantial Ground for Difference of Opinion

 Although the defendants have satisfied the first two criteria for interlocutory review, they cannot clear the third hurdle. Despite the defendants' zealous arguments for certification, the Court is not convinced that its ruling on the defendants' preemption defense presents substantial grounds for a difference of opinion. Substantial grounds for a difference of opinion arise when an issue involves "one or more *difficult* and *pivotal* questions of law not settled by controlling authority." *Philip Morris,* 957 F.Supp. at 330 (emphasis added). As United points out, a "difference of opinion" suited for a § 1292 appeal does not arise every time a court is called upon to apply a particular legal principle to a novel fact pattern. Instead, the issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts. *See In re Jackson Brook Inst., Inc.,* 280 B.R. 1, 8 (D.Me.2002) (an argument that a court misapplied settled law does not justify a § 1292 appeal).

Here, the relevant ADA preemption standard (the "significant effects" test) is well-settled in the First Circuit, *see Buck,* 476 F.3d at 34–35, and there is no substantial disagreement among the other circuits. Thus, the issue that the defendants challenge is not the underlying legal principle itself but rather the Court's application of that principle to the particular factual scenario in this case.

The defendants maintain nevertheless that this is a "case of first impression" because no other court has ever decided whether the ADA preempts tort claims asserted by an airline against a customer when there is a specific contract governing their relationship. They insist that this Court's decision, which they perceive as an exception to the "otherwise consistent rule" that breach of contract claims are the sole recourse for parties to an air transportation services contract, creates a asymmetrical regulatory scheme under which airline *customers* are the only market actors subject to tort claims. Such an asymmetry, the defendants contend, would fly in the face of the ADA the purpose of which is to promote market efficiency.

Although this Court's ruling may be the first instance in which a court has applied the ADA preemption test to a tort claim by an a airline *against* a customer, the defendants overstate the novelty of the holding. The defendants frame the case as one in which United seeks to use tort law to alter the parties' contractual relationship but it is not, principally, a case assessing the terms of an airline carriage contract. To the contrary, the defendants' alleged scheme to misappropriate flight vouchers is, in essence, one involving a common brokerage arrangement. Tort claims brought by airlines against unauthorized ticket brokers are common. *See, e.g., Frequent Flyer Depot,* 281 S.W.3d 215 (ADA does not preempt tort claims against frequent flyer miles broker); *Weiner,* 1999 U.S. Dist. LEXIS 16377 (ADA does not preempt tort claims against persons and companies involved in unauthorized resale of discount ticket coupons); *American Airlines v. Christensen,* 967 F.2d 410 (10th Cir.1997) (upholding summary judgment on tort claims brought against frequent flyer ticket brokers); *American Airlines v. American Coupon Exchange, Inc.,* 721

F.Supp. 61 (S.D.N.Y.1989) (denying ticket broker's motion to dismiss airline's tort claims).

The defendants have cited no case in which an airline's suit to prosecute a brokerage scheme has been preempted by the ADA. Although the alleged scheme in this case was executed by United's purported customers rather than a third party broker, the gravamen of the scheme (and its lack of effect on airlines' rates or services) is the same. Thus, because this case does not present a unique or pivotal question of law, interlocutory review is unwarranted.

### ORDER

In accordance with the foregoing, the defendants' motion for interlocutory review (Docket No. 76) is **DENIED**.

**So ordered.**