MURDOCK, Justice
(dissenting).
I am compelled to dissent from the conclusion reached by the main opinion in this case because I believe that: (1) this Court, as an appellate court, inappropriately engages in a weighing and resolution of factual issues; and (2) the case is not appropriate for Rule 5, Ala. R.App. P., review. I address each issue in turn.

A. This Court’s Resolution of Factual Issues

As to the merits of this Court’s decision today, I submit there is a fundamental problem with its analysis that is encompassed within the statement in the main opinion that “[g]iven th[e] context, the terms ‘in,’ ‘on,’ and ‘about’ [as used in the indemnity clause] are not ambiguous.” 209 So.3d at 1098. I submit that the opposite is the case, a conclusion supported by, inter alia, reasoning employed in the main opinion itself.
1. The Word “About ”
The pertinent portion of the lease agreement between Once Upon a Time, LLC (“OUAT”), and Chappelle Properties, LLC (“Chappelle”), provides that “[OUAT] will ... indemnify and save harmless [Chap-pelle] and [Chappelle’s] agents from any loss, cost, damage and/or expenses caused by injuries to persons or property while in, on or about the Leased Premises, not attributable to the willfully wrongful action of [Chappelle].” (Emphasis added.) The main opinion purports to arrive at the “plain, ordinary, and natural meaning” of the above-emphasized phrase by providing dictionary definitions for each one of the individual terms — “in,” on” and “about”— separately. 209 So.3d at 1098.
If those three words are to be construed separately, rather than together as a cohesive phrase or a legal term of art (see discussion, infra), then without question the key word for purposes of this case is “about.” The main opinion offers three definitions of that word:
“‘About’ has been defined, in part, as: T. around, on the exterior part or surface of; as, a girdle about the waist. 2. Near to in place, with the sense of circularity; close to; as, enemies about him on every hand .... 7. around, referring to compass or circumference; as, two yards about the stern.’ Webster’s New Universal Unabridged Dictionary 5 [ (2d ed.1983) ].”
209 So.3d at 1098.
Those three definitions, particularly the second, would appear to be helpful in the present inquiry. In point of fact, however, they all pose a problem for the analysis presented in the main opinion, which concedes that “[the proximity of the OUAT retail space to the vacant retail space is pertinent to our review.” 209 So.3d at 1096 (emphasis added). To one degree or another, all three definitions tend to support the notion that the indemnity clause would apply to incidents occurring “near to” or “around” the leased premises, hot just to incidents occurring precisely within the boundary lines of the leasehold. Even clearer in this regard, and more attuned to the manner in which such a word would be *1101 used in conveyances of interests in real property and other legal documents, is Black’s Law Dictionary, which defined “about,” in part, as meaning “[n]ear by, close at hand, convenient of access.” Black’s Law Dictionary 8 (6th ed.1990).[5]
Although the main opinion offers the above-quoted dictionary definition of “about,” it does not discuss its implications for the present case. Instead, the result reached in the opinion appears to be based, at least implicitly, on the other two terms — “in” and “on.”[6] But if the parties had simply wanted to describe the inside of the leased retail space up to its precise boundary lines, they could have just used the word “in,” or even “in or on,” before the term “Leased Premises.” Instead, they chose to employ the phrase “in, on or about the Leased Premises.” In so doing, they logically intended something different than if they had limited themselves to “in” or “in or on.”
For these reasons alone, I cannot agree that the term “about” has the plain and ordinary — or unambiguous — meaning it effectively is given by the main opinion. To the contrary, if we are to posit, as does the main opinion, that this term is “susceptible [of] only one reasonable meaning” and thus not “ambiguous,” Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000), then, based on the aforesaid definitions, I contend that the more compelling choice clearly would be one that would not limit the inquiry to the precise boundary lines of the leasehold space but would instead require inclusion of some area “near” or “around” those premises.
That said, and particularly in the context of the case we have before us, I cannot conclude that the separate word “about” is in fact unambiguous — not “susceptible of more than one reasonable meaning” — so as to allow us to decide its meaning as a matter of law. Another part of the Black’s Law definition of “about” states: “In connection with distance or locality, the term is of relative significance, varying with the circumstances.” Black’s Law Dictionary 8 (6th ed.1990) (emphasis added). In other words, by its nature, the meaning of the term “about,” when used to describe physical proximity, is dependent on the factual circumstances. As such, it is a word that literally “by definition” can have more than one meaning depending on the factual context in which it is used - (and which concomitantly raises factual questions that must be decided by the fact-finder, see Part B below).
2. The Phrase “In, On or About ”
That said, I believe we err by focusing on the definition of the single word “about” rather than the phrase “in, on or about the Leased Premises” as a whole. In fact, phrases that employ the term “about” in the manner stated are legal terms of art. As one court has noted:
“[T]he phrase ‘in or about’ is one of art. Defined as ‘a phrase having reference to *1102 an area and expressing the idea of physical proximity’ (Ballantine’s Law Dictionary, ([3d ed.], p. 631), it frequently is used synonymously to mean ‘around’ or ‘on the outside of’ (Thompson v. Banks, 43 N.H. 540, 541 [ (1862) ]). It signifies locality.”
Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153, 159, 366 N.E.2d 263, 266, 397 N.Y.S.2d 602, 606 (1977).
Thus, when some variation of this phrase is used to describe a premises, courts usually have determined that it refers not just to the premises itself, but also to areas around the premises. This is true even when it is coupled with the word “in” conjunctively rather than disjunctively, as in the present case. See, e.g., Stovall v. Pickering Corp., No. CV 591-267 (S.D.Ga. Apr. 23, 1992) (not selected for publication in F.Supp.) (concluding that the phrase “in and about the Demised Premises” in an indemnity provision of a lease encompassed activity “not only on the actual theater property, but also in the parking lot directly adjacent to the theater”); Hogeland, 42 N.Y.2d at 157, 159, 366 N.E.2d at 265, 266, 397 N.Y.S.2d at 604, 606 (holding that a lease indemnity clause that provided that the lessor would be indemnified for “ ‘any accident ... whatsoever ... to any person ... in or about the Tenant’s demised premises’” “must be held to include the sidewalk area where the accident happened”); Carlton v. Hoskins, 134 Ga.App. 558, 559, 215 S.E.2d 321, 322 (1975) (stating that the phrase “in and about the premises” in a lease “could be construed to refer to an area near or adjacent to the rented apartment” and thus “it would be a jury question as to what area of the complex was to be included within such lease clause”); William A. Doe Co. v. City of Boston, 262 Mass. 458, 462, 160 N.E. 262, 263 (1928) (explaining that “[t]he renovations, repairs and changes which the lessor was authorized to make were not confined to the stalls and cellars leased, but could be made ‘in and about the leased premises.’ We construe the word ‘about’ as meaning in other parts of the building, and not as limiting the renovations and changes to parts of the building leased to adjoining tenants of the lessee.”); and Wise v. Central Dairy Co., 121 Kan. 258, 246 P. 501, 503 (1926) (holding that a workmen’s compensation statute that provided for recovery for injuries received “in, on, or about the factory” allowed for recovery where “the car was on a public street 200 feet from defendant’s factory, when the injury was received” because the injury was “was near the factory”).
Two early Alabama cases are in accord. Easterling v. State, 30 Ala. 46 (1857), although not a case involving a leased premises, is instructive. Easterling concerned a criminal statute that “declare[d] it unlawful for any person, without a license, to sell vinous or spirituous liquor, in any quantity, ‘if the same is drank on or about the premises.’ ” 30 Ala. at 48. The Court reasoned that
“[t]he phrase, ‘about the premises,’ was used to embrace places over which the unlicensed seller of such liquor had no legal right to exercise authority or control, but which were yet so near to his premises, and so situated in relation thereto, that to permit the liquor sold by him to be drank at them would produce the very evil in kind, though not in degree, which the prohibition against drinking it on his premises was intended to prevent.”
Id. The Court concluded that where the buyer had taken the liquor “to the front of the store of another on the opposite side of the street, and out of the view of the seller’s house, and about fifty feet therefrom, it is not a conclusion of law from *1103 these facts, without more, that the place where the liquor was drank was either the premises of the seller, or about his premises, within the meaning of’ the statute. 30 Ala. at 49. Consequently, the Court reversed the judgment of the trial court and remanded the cause because it was “the exclusive province of the jury” to determine whether a violation of the statute had occurred under such circumstances. Id. at 49.
By the same token, in Brown v. State, 31 Ala. 353, 356 (1858), a case involving the same statute, the Court concluded that “[i]t certainly requires no argument to show, that a place in a public highway, within ten, fifteen or twenty steps of the defendant’s store in front, and in full view of it, comes within the purview of the phrase, ‘about his premises.’” Easterling and Brown illustrate both the potential ambiguity in the phrase “about the premises” and the fact that the phrase commonly is understood to refer to something beyond the exact boundaries of the premises itself.
Thus, interpreting the phrase “in, on or about the Leased Premises” according to at least one, if not the most common, meaning ascribed to it as a legal term of art would require this Court to hold that OUAT assumed an obligation to indemnify Chappelle not just for injuries sustained within the exact boundaries of the leased retail space, but also for some injuries that occur around or near that space, depending on the circumstances.
3. Invading the Jury’s Province
Just as the individual word “about” may have different meanings depending on the context in which it is used, so too can phrases that use that word. In Thompson v. Banks, 43 N.H. 540 (1862), a plaintiff who obtained a mill privilege[7] from the defendant contended that the lease that gave the plaintiff the right “of laying logs, board, and other lumber on or about said privilege” allowed him, to place logs and lumber on the defendant’s property outside the privilege. 43 N.H. at 540. “The whole controversy thus turn[ed] upon the construction to be given to the words ‘on or about’ in the covenant.” Id. Although the court ruled against the plaintiff, in so doing it provided instructive reasoning as to the importance of the factual context in assessing the meaning of such contractual provisions in any given case:
“Though the word ‘about’ may frequently have the meaning of around on the outside of, without the limits of, & a, yet it as frequently, in common conversation, means through, or over, in various directions, or, in the various parts of the whole promiscuously. To travel about the country means to go from place to place in the country, and not out of it. A man about town, is not a man out of town. So if a man should scatter or lay his lumber all about his mill-yard, we should éxpect to find it somewhere in the limits of the yard, and not that it would all be outside of them. To ascertain the meaning of the word about, it seems necessary to consider the words used directly in connection with it, and also the subject matter in relation to which they aré used.’’
43 N.H. at 541 (emphasis added).
What Thompson illustrates, especially in conjunction with the previously cited cases, is that the phrase “in, on or about the Leased Premises” is susceptible of more than one reasonable meaning and that that *1104 ambiguity must be clarified through factual context. That is, in fact, what the Court has attempted to do in this case without formally acknowledging it.
As noted at the outset, the main opinion concludes that “[g]iven th[e] context, the terms ‘in,’ ‘on,’ and ‘about’ are not ambiguous.” 209 So.3d at 1098 (emphasis added). It then explains the “context,” that is, the contextual facts, on which it relies: “The OUAT retail space is separated from the vacant retail space by an interior hallway. The vacant retail space is not directly accessible from the OUAT retail space, and the vacant retail space constitutes a separate, commercial retail space that OUAT does not and has not leased.” 209 So.3d at 1099. Based on those parol facts, the main opinion concludes that “no ordinary, plain, and natural meaning” of the phrase “in, on or about” “could be construed as encompassing injuries occurring within the vacant retail space.” 209 So.3d at 1099.
As discussed, the main opinion in its analysis does not use the most commonly understood “ordinary meaning” of the word “about” when it is used to refer to premises, nor does it pursue the above-discussed legal-term-of-art understanding of the phrase “in, on or about.” What the main opinion does do, however, is rely upon the above-listed contextual facts— facts outside the four corners of the lease — to ascertain the meaning of terms it claims are unambiguous. But if one must go beyond the four corners of a contract to find evidence of the meaning of its terms, then by definition those contract terms are ambiguous. And conversely, if the terms of a contract are in fact unambiguous (as the main opinion concludes is the case here), fundamental tenets of contract construction prevent resort to such collateral facts. See, e.g., Marriott Int'l Inc. v. deCelle, 722 So.2d 760, 762 (Ala.1998) (explaining that “[t]he general rule of contract law” is that, “if a written contract exists, the rights of the parties are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms” but that when a contract is ambiguous parol or extrinsic evidence will be allowed to clarify its meaning); J.I.T. Servs., Inc. v. Temic Telefunken-RF, Eng’g, L.L.C., 903 So.2d 852, 856-57 (Ala.Civ.App.2004) (“In Port City Construction Co. v. Henderson, 48 Ala. App. 639, 266 So.2d 896 (1972) (relied upon in Parr v. Godwin[, 463 So.2d 129, 132 (Ala.1984) ]), the [appellate court] noted that when a written contract is ‘ambiguous, incomplete or uncertain as to all of the intentions of the parties, the court may consider extrinsic parol evidence as to surrounding matters and circumstances ... in order to determine the actual intent of the parties to the agreement.’ 48 Ala.App. at 642-43, 266 So.2d at 899.”).
In accord with the foregoing precepts, this Court stated in Voyager Life Insurance Co. v. Whitson, 703 So.2d 944, 949 (Ala.1997) that, “[i]f one. must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.” (Emphasis added.) The analysis in the main opinion attempts to construe the ambiguity presented by the phrase “in, on or about the Leased Premises” by examining the surrounding circumstances without acknowledging the existence of the ambiguity.
In proceeding as it does, the main opinion inherently picks and chooses from among the available contextual facts. Contextual facts to which the main opinion does give weight are, as already noted, listed above. Conversely, for example, the main opinion contends that the fact that *1105 “OUAT subsequently gained access to the vacant retail space to store its inventory temporarily ... is not relevant to answering the circuit court’s question concerning the construction of the words in the indemnity clause.” 209 So.3d at 1099 (emphasis added). And consider as well the following facts not selected or given weight by the Court’s analysis today: At the time of the events for which indemnity is sought, the tenant (OUAT) was using the vacant retail space pursuant to an agreement between the landlord and the tenant that the tenant would use the space; the tenant had need of the space in the first place only because there was a malfunction in the HVAC system, the sound functioning of which was the responsibility of the landlord, which had “flooded” part of the leased premises, including a closet space apparently being used by the tenant for storage; those events prevented the tenant from realizing the full use and enjoyment of the leased premises; upon surveying the aforesaid circumstances, the landlord offered the tenant the use of the vacant retail space; the tenant accepted the landlord’s offer and did in fact use the vacant retail space in substitution for part of the leased space; that use was an accommodation by the parties to allow the tenant to have the use and enjoyment of the leased premises for which it had bargained in the same lease agreement that contained the indemnification clause; the space at issue here was vacant and is only a matter of feet from the space leased by the tenant; it was foreseeable that a tenant occupying the space immediately next to and almost contiguous with this vacant space, or one of that tenant’s employees, might at some point enter upon this space for some reason, and that this likelihood existed precisely because the lease arrangement itself put the tenant and its employees in the immediate vicinity of and with physical access to that space; the injured employee of the tenant accessed the space at the tenant’s instruction and for the tenant’s benefit consistent with the tenant’s use of the leased premises; and the purpose of the indemnity clause was to protect the landlord from liabilities to which it was exposed because of the existence of the lease arrangement. Surely, it is at least reasonable to consider that the parties might have intended the indemnity clause to cover an incident occurring in a vacant area just feet away from the premises leased by OUAT, especially where, as here, the area is being used by OUAT pursuant to an agreement of the parties intended to ensure to OUAT the full enjoyment of its leasehold.
By rejecting the idea that the terminology in the indemnity clause is at least ambiguous, and instead deciding upon a meaning for this terminology based upon its selection from among the available contextual facts which ones to give weight and how much weight to give them, the main opinion operates outside the well established, three-part process by which courts determine the meaning of contracts and usurps a part of that process reserved to the finder of fact. This Court previously has explained this three-part process as follows:
“When a trial court is [faced] with a contract issue, it is important for the trial court to determine as soon as practicable the ‘threshold issue’ whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must ‘ “determine the force and effect of the terms of the contract as a matter of law.”’ Cherokee Farms, Inc. [v. Fireman’s Fund Ins. Co.], 526 So.2d [871], 873 [ (Ala.1988) ], quoting Wigington v. Hill-Soberg Co., 396 So.2d 97, 98 (Ala. 1981). However, if the trial court finds the contract to be ambiguous, it ‘must *1106 employ established, mies of contract eonstmction to resolve the ambiguity.’ Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). If the application of such mies is not sufficient to resolve the ambiguity, factual issues arise:
“‘If one must go beyond the four corners of the agreement- in construing an ambiguous agreement, the- surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling' in resolving the ambiguity.’
“Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853 (Ala.1991).”
Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400, 404-05 (Ala.2001) (emphasis added).
Thus, although the present case entails resolution of a contractual ambiguity by resort to parol facts and circumstances; this Court fails to leave resolution of this ambiguity to the jury. In my view, the Court has aggregated to itself determinations that, at best, are within the province of the jury because the meaning of the pertinent lease provision cannot be divined by applying legal rules of construction to the four corners of the document.[8]

B. The Misuse of Rule 5

That the issue here ultimately involves deciding and weighing collateral or parol facts that bear on a decision as to the ultimate “fact” of what the parties agreed to is one of several reasons why this case is not appropriate for a Rule 5 permissive appeal in the first place, Rule 5 allows interlocutory appeal only of “controlling question[s] of law as to which there is substantial ground for difference of opinion.” Rule 5(a), Ala. R.App. P. (emphasis added).
This restriction first means that Rule 5 is intended only for issues that involve pure questions of law. Rule 5 does not apply in situations that involve the application of law to facts or factual issues that are so one-sided that it can be said that “as a matter of law” those issues can be decided only one way. “Rule 5 is not a vehicle by which to obtain review of ‘significant and unresolved factual issues.’ ” Gowens v. Tys. S., 948 So.2d 513, 530 (Ala.2006) (quoting Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 104 (Ala.2003) (emphasis added in Gowens)). See also McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir.2004) (stating that permissive appeals are “intended, and should be reserved, for situations in which the court of appeals can rule on a *1107 pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts” (emphasis added)); United Air Lines, Inc. v. Gregory, 716 F.Supp.2d 79, 92 (D.Mass. 2010) (noting that, in an interlocutory appeal, “the issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts ” (emphasis added)).
Second, the limitation in Rule 5 to issues “as to which there is substantial ground for difference of opinion” is a limitation to questions of law that either have never been decided or are the subject of a split of authority or a conflict in our precedents. Otherwise, this Court is- merely performing the trial court’s function of researching and deciding legal issues, a task for which the trial court is well equipped and to which it equally is assigned. See, e.g., Couch v. Telescope Inc., 611 F.3d 629, 638 (9th Cir.2010) (noting that “[c]ourts traditionally will find that a substantial ground for difference of opinion exists where ‘. novel and difficult questions of first impression are presented’ ” (quoting 3 Federal Procedure § 3:212 (Lawyers ed.2010))). The “difference of opinion” must arise, not from the parties’ disagreement as to an issue, but rather from the fact that either our Court has not addressed an issue or there appears to be an actual conflict in our existing precedent on the issue. See, e.g., United Air Lines, Inc., 716 F.Supp.2d at 92 (observing that “[s]ubstantial grounds for a difference of opinion arise when an issue involves ‘one or more difficult and pivotal questions of law not settled by controlling authority ’ ’’(quoting Philip Morris Inc. v. Harshbarger, 957 F.Supp. 327, 330 (D.Mass.1997) (last emphasis added))); Oyster v. Johns-Manville Corp., 568 F.Supp. 83, 86 (E.D.Pa.1983) (stating that “a ‘substantial ground for difference of opinion’ may be demonstrated by adducing ‘conflicting and contradictory opinions’ of courts which have ruled on the issue” (quoting Dorward v. Consolidated Rail Corp., 505 F.Supp. 58, 59 (E.D,Pa,1980))); Singh v. Daimler-Benz, AG, 800 F.Supp. 260, 263 (E.D.Pa. 1992), aff'd, 9 F.3d 303 (3d Cir.1993) (observing that the plaintiffs’ citation of the sole district court decision supporting their position in contrast to all the courts that had ruled otherwise did not create “an issue on which there is a substantial ground for difference of opinion”); and Clark v. United States, 481 F.Supp. 1086, 1100 (S.D.N.Y.1979) (concluding that “there is no ground for difference of opinion as to” the issue on which a defendant sought a permissive appeal because the only case the defendant had cited in his favor had been “undermin[ed]” by later circuit precedent (repudiated on other grounds by Barbera v. Smith, 654 F.Supp. 386, 389 (S.D.N.Y.1987))).
This appeal does not present a pure question of law. Instead, we have before us ultimately a factual question as to exactly what it is that the parties agreed to. To the extent that principles of law must be invoked in answering that question, those principles are, in this case, basic rules of contract construction that, as legal precepts, could not be more well established and lacking of any ground for difference of opinion. At best, then, we are being asked to apply these basic, undisputed principles of law to the peculiar facts of this case. That is not the proper office of a Rule 5 permissive appeal.
C. Conclusion
In sum, we now involve ourselves in selecting and weighing facts from outside the four corners of a contract on our way to deciding the ultimate “fact” of what the parties meant by certain contract language that, in my view, is at least ambiguous and, in any event, is not resolvable merely by *1108 the application of rales of contract construction, but depends for resolution upon parol circumstances that by right in this case should be considered by a jury.
I believe this is a classic case where this Court should allow the trial court to do its job and allow the process of litigation to work itself to a natural conclusion. Were we to do so, the case might in fact (whether because of a settlement or because of a judgment that neither side finds sufficient reason to appeal) never be in need of this Court’s attention. Indeed, the strictures of Rule 5 are intended in a case like this to give us no option but to allow the litigation process to work without our involvement. Rule 5 is not a mechanism to relieve trial courts of their responsibilities to decide questions of law (which is their job just as it is ours), to decide facts, or to apply the law to those facts. I believe we unnecessarily short-circuit the appropriate judicial process by deciding this permissive appeal.
For the foregoing reasons, I respectfully dissent.
BRYAN, J., concurs.

. The definition of the word "about” was dropped from the seventh and subsequent editions of Black's Law Dictionary.

. The main opinion defines " ‘[i]n' ... as 'contained or enclosed by, inside; within; as, in the room, in the envelope.' Webster’s New Universal Unabridged Dictionary 918 (2d ed.1983).” 209 So.3d at 1098. It defines "on” as;
'1. upon; in a position above, but in contact with ... and supported by; placed or lying in contact with; as, my book is on the table; the table stands on the floor; the house rests on its foundation .... 5. at or near; by; indicating situation, place, or position; as, a ship is on the coast; on each side stands an armed man.'
“Webster’s New Universal Unabridged Dictionary 1249 [ (2d ed.1983) ]."
209 So.3d at 1098.

. Black's Law Dictionary defines a "mill privilege” as "[t]he right of a mill-site owner to construct a mill and to use power from a stream to operate it, with due regard to the rights of other owners along the stream's path.” Black's Law Dictionary 1144 (10th ed.2014).

. Over the course of two footnotes, the main opinion suggests that my analysis of the word ‘'about” as used in'the indemnity clause is inapposite because, according to the main opinion, the question presented in this case is limited to "whether the indemnity clause ‘should be interpreted to extend beyond the four walls of [the OUAT retail space] to include incidents occurring in [the vacant retail space ].’ " 209 So.3d at 1098 n, 3 and 1099 n, 4. It is the language of the indemnity clause, however, that governs whether any given incident in any given location is or is not to be the subject of indemnification. That clause includes the prepositional phrase "in, on or about,” not the phrase "in or on.” The proper result in this case is governed by what the parties intended by this phrase — including, as it does, the term "about.” I see nothing in this language that necessarily excludes a particular location merely because it is within a "separate retail space,” especially where, as here, that "separate” space is only a few feet removed from the leased space, is easily accessed by employees of the lessee, and, in fact,, was accessed by.those employees with the permission of the landlord under exigent circumstances for purposes of allowing the lessee to have the bargained-for benefit of the leased space.